IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| GRAIN PROCESSING CORPORATION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHESTER J. CULVER,<br>Governor of the State of Iowa,<br><br>　　　　Defendant. | No. 3:10-cv-0008-JAJ<br><br><br><br>**ORDER** |

　　　In an effort to resolve an ongoing labor dispute between Grain Processing Corporation and UFCW Local 86D, Governor Chester J. Culver initiated proceedings to appoint a board of arbitration and conciliation pursuant to authority granted in Chapter 679B of the Code of Iowa.  Grain Processing Corporation ("GPC") seeks to enjoin the Governor's action contending that such action is prohibited by federal law.  GPC invokes the Supremacy Clause of the United States Constitution contending that the Governor's action is preempted by the National Labor Relations Act ("NLRA").  Because the Governor's action is clearly preempted by the NLRA, the court grants the relief requested by GPC.

## PROCEDURAL HISTORY

　　　On December 28, 2009, Wayne E. Shoultz, chair of the Muscatine County Board of Supervisors, wrote to Governor Culver indicating that 350 workers at GPC had been locked out when labor negotiations between the company and the union broke down in August 2009.  The letter indicated that there has been no violence.  However, due to the

anxiety and uncertainty in the lives of workers, Supervisor Shoultz asked for assistance to end the lockout.  He requested that the Governor exercise his authority pursuant to Chapter 679B of the Code of Iowa to appoint a board of arbitration and conciliation to conduct an investigation and make a decision to settle the dispute.

On January 14, 2010, Governor Culver wrote to Dan Olson of GPC and William Poggemiller and Lorraine Orr of the UFCW notifying them of his intent to appoint a board of arbitration and conciliation pursuant to Chapter 679B.  The Governor directed each side to nominate members of the board.  The Governor indicated that upon the board's appointment, it was to visit the place where the dispute exists and make careful inquiry.  The board was to advise the parties what ought to be done to adjust the controversy and to make a written decision.  Its decision was to contain findings of fact and recommendations as to how to end the controversy.  The decision was to be made available for public inspection and published in two newspapers of general circulation in Muscatine County.  The letter concluded as follows:

> I am hopeful the appointment of this board of arbitration and conciliation will bring this dispute to a close and allow UFCW members to resume work at GPC under amicable terms.

GPC commenced this action on January 22, 2010.  In the complaint, it seeks a declaratory judgment that the proposed action pursuant to Chapter 679B is preempted by the NLRA by operation of the Supremacy Clause of the United States Constitution.  GPC further requests permanent injunctive relief prohibiting the Governor from invoking the processes and procedures of Chapter 679B.

Upon receipt of the plaintiff's application for preliminary injunction, the court contacted the parties to determine the process for resolving the complaint.  During a status conference, the parties preliminarily indicated that there were no factual disputes to be resolved and that the matter could be resolved by the court without need for an evidentiary hearing.  The parties confirmed the agreement during a hearing on the merits held

February 12, 2010, in Davenport, Iowa. Specifically, both parties agreed that the factual matters for the court to rely upon could be found in those portions of the complaint that were admitted by the Governor, Supervisor Wayne E. Shoultz's letter of December 28, 2009, and the Governor's January 14, 2010, letter. The parties requested that the court resolve plaintiff's request for permanent injunctive and declaratory relief and enter judgment on the merits.

## JURISDICTION

The parties agree that plaintiff GPC is an Iowa corporation with its principal place of business in Muscatine, Iowa, and that it is engaged in interstate trade relations. They further agree that the Governor is sued in his official capacity as Governor. The court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1337(a) and venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2).

## FINDINGS OF FACT

GPC is an Iowa corporation with its principal place of business in Muscatine, Iowa. It annually contracts with, sells and transports products directly to customers located outside the State of Iowa, producing annual gross revenue in excess of $50,000. As such, it is subject to the jurisdiction of the National Labor Relations Board.

GPC has been involved in a labor dispute with the United Food and Commercial Workers Union, Local 86D for approximately seventeen months. On January 19, 2010, GPC received the certified letter from Governor Culver, a copy of which is attached as Exhibit A. As noted above, the letter indicated the Governor's intention to invoke Iowa Code Chapter 679B to appoint a board of arbitration and conciliation to resolve the ongoing labor dispute between GPC and UFCW, Local 86D.

## ISSUES PRESENTED

The parties present two issues for resolution. First, GPC contends that Chapter 679B does not apply to it. Second, it contends that the Governor does not have authority to invoke this chapter under these circumstances because such action is preempted by the NLRA. The first issue does not need to be resolved because of the resolution of the second issue.

The Governor contends that Chapter 679B applies to this dispute, that only one or two provisions of Chapter 679B are preempted and that he is entitled to take action pursuant to the local interest exception to NLRA preemption.

## CHAPTER 679B

Chapter 679B of the Code of Iowa provides in pertinent part:

> When any dispute arises between any … corporation and their employees … of this state, except employers or employees having trade relations directly or indirectly based upon interstate trade relations operating through or by state or international boards of conciliation, which has or is likely to cause a strike or lockout, involving ten or more wage earners, and which does or is likely to interfere with the due and ordinary course of business, or which menaces the public peace, or which jeopardizes the welfare of the community, and the parties thereto are unable to adjust the same, either or both parties to the dispute, … or the chairperson of the board of supervisors of the county in which said employment is carried on … after investigation, may make written application to the Governor for the appointment of a board of arbitration and conciliation …

IOWA CODE § 679B.1. If the Governor is satisfied that the dispute comes within the provisions of § 679B.1, he is required to appoint a board of arbitration and conciliation. IOWA CODE § 679B.2. The method of selecting members of the board of arbitration and conciliation are outlined in IOWA CODE §§ 679B.2-4. The parties are given the option as

4

to whether the board's "decision" will be binding. The board has all of the powers of a state district court in civil cases to compel the attendance of witnesses, administer oaths, compel testimony and require the production of books, papers and other documents or things as the board may deem requisite to the full investigation of the matters into which it is inquiring. IOWA CODE §§ 679B.8, 10. The board is not bound by rules of evidence and may accept any evidence "as in equity and good conscience it thinks material and proper". IOWA CODE § 679B.9.

The board is commanded pursuant to Chapter 679B to visit the place where the controversy exists and make careful inquiry into the cause of the dispute. The board shall hear all persons interested who come before it, advise the respective parties what ought to be done or submitted by either or both of the parties to the dispute to adjust said controversy, and make a written decision thereof which shall at once be made public and open to public inspection and shall be recorded by the secretary of the Board. IOWA CODE § 679B.11. Strikes and lockouts are prohibited pending completion of the board's investigation. IOWA CODE § 679B.12.[1] The board must render a decision stating such details as will clearly show the nature of the controversy and make a written report to the Governor of its findings of fact and its recommendation to each of the parties to the controversy. IOWA CODE § 679B.13. Finally, the decision of the board must be published in two newspapers of general circulation in the county in which the business is located upon which the dispute arose. IOWA CODE § 679B.14.

---

[1] The Governor concedes that this provision is preempted by the NLRA and has not sought to invoke it.

## PREEMPTION PURSUANT
## TO THE NATIONAL LABOR RELATIONS ACT

In passing the National Labor Relations Act ("NLRA"), Congress had the intent to enact comprehensive federal law of labor relations. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 110–11 (1989); 29 U.S.C. § 151. The Supreme Court has long held that the act is meant to "prevent unfair labor practice in interstate commerce on the part of those engaged in such commerce . . . ." Foster Bros. Mfg. Co. v. N.L.R.B., 85 F.2d 984, 986 (1936).

When considering whether preemption applies, the Court must first scrutinize the "purpose of Congress" as the "ultimate touchstone" in any preemption analysis. Malone v. White Motor Corp., 435 U.S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)). Next, the analysis must establish as a "basic assumption" that, despite deference to the Supremacy Clause, Congress did not intentionally "displace state law." Maryland v. Louisiana, 451 U.S. 725, 746 (1981). The preemption doctrine acts to "protect a uniform national labor relations policy from interference by state and federal courts." Vandeventer v. Local Union No. 513 of Int'l Union of Opt'g Engineers, AFL-CIO, 579 F.2d 1373, 1377 (8th Cir. 1978). When preemption does pertain to the matter at hand, courts should "defer to the exclusive competence of the NLRB with regard to activities that are arguably subject to the National Labor Relations Act." Id. (citing Vaca v. Sipes, 386 U.S. 171 (1967)).

Congressional purpose to displace state law may be shown in several ways: a pervasive scheme of regulation so "as to make reasonable the inference that Congress left no room" for state supplementation, Maryland, 451 U.S. at 746 (quoting Pennsylvania R. Co. v. Public Service Comm'n, 250 U.S. 566, 569 (1919)); a field in which the federal "interest is so dominant" that federal law is deemed "to preclude enforcement of state laws on the same subject[,]" id. (citing Hines v. Davidowitz, 312 U.S. 52, 70 (1941)); the

federal and state policy have the same purpose or object, id. (citing New York Cent. R. Co. v. Winfield, 244 U.S. 147, 152–53 (1917)); or "the state policy may produce a result inconsistent with the objective of the federal statute." Id. at 747 (citing Hill v. Florida, 325 U.S. 538, 543 (1945)).

Specifically in reference to the NLRA, the Supreme Court has established two types of preemption. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985). The *Garmon* preemption, San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), prohibits state regulation of "activity that the NLRA protects, prohibits, or arguably protects or prohibits." Wisconsin Dep't of Industry v. Gould, Inc., 475 U.S. 282, 286 (1986). *Garmon* explicitly forbids state and local regulation of any activities that the NLRA protects under Section 7 or activities that "constitute an unfair labor practice" pursuant to Section 8.[2] Garmon, 359 U.S. at 244.

Alternatively, the *Machinists* preemption, Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976), restricts state regulation in areas that Congress intended "to be controlled by the free play of economic forces." Id. at 140. *Machinists* uses the same analysis for so-called "self-help" activities used by either the union or the employer: would "the exercise of plenary state authority to curtail or entirely prohibit self-help . . . frustrate effective implementation of the Act's processes." Golden State Transit v. City of Los Angeles, 475 U.S. 608, 615 (1986). *Machinists* acts as a safeguard to balance "uncontrolled power of management and labor" in order to advance the respective interests of each. Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc. (*Boston Harbor*), 507 U.S. 218, 226 (1993).

Before a court may apply *Garmon* or *Machinists* preemption, it must find that the

---

[2] Sections 7 and 8 of the NLRA cross-reference to 29 U.S.C. §§ 157, 158. Section 7 governs the rights of employees and Section 8 regulates unfair labor practices.

state action at issue embodies some type of regulation between employees and employers. See id. at 227.  Congress meant to insulate labor relations from governmental outside forces.  To do this, the NLRA ensures "that employers and their employees could work together to establish mutually satisfactory conditions . . . [without] the Government . . . becom[ing] a party to the negotiations and impos[ing] its own views of a desirable settlement."  H.K. Porter Co. v. N.L.R.B., 397 U.S. 99, 103–04 (1970).  Coercive regulation has time and again been held to have a "real effect on federal rights." Livadas v. Bradshaw, 512 U.S. 107, 119 (1994) (citing Nash v. Florida Industrial Comm'n, 389 U.S. 235 (1967)).  When considering regulation pertinent to preemption law, the Supreme Court has held that regulation includes traditional judicial action and encompasses other actions such as enjoining peaceful picketing, San Diego Building Trades Council v. Garmon, 353 U.S. 26, 77 (1957), or later awarding damages for tort injuries caused by such picketing.  See Garmon, 359 U.S. 236.  Prohibited government involvement can be as subtle as an attempt to "induce or encourage" because the Court construes these terms "broad[ly] enough to include . . . every form of influence and persuasion."  Int'l Brotherhood of Elec. Workers, Local 501, A.F. of L. v. N.L.R.B., 341 U.S. 694, 701–02, 702 n.7 (1951) (as defining "induce" pursuant to secondary boycotting).  The prerogative that unions and employers should alone settle differences is buttressed by the statutory admonishment not to "interfere with, restrain, or coerce employees" rights to bargain collectively.  29 U.S.C. §§ 158, 159.  Thus, there is congressional intent "that the parties should have wide latitude in their negotiations, unrestricted by any governmental power to regulate the substantive solution of their differences."  N.L.R.B. v. Insurance Agents' Int'l Union, AFL-CIO, 361 U.S. 477, 488 (1960).

A state statutory scheme remarkably similar to that presented here was held to have been preempted by the NLRA in General Electric Company v. Callahan, 249 F.2d 60 (1st Cir. 1961).  The court detailed the reasons why the provisions of the Massachusetts statute,

appointing a board of conciliation and arbitration to resolve a labor dispute, were preempted by the NLRA:

> That State Board action pursuant to the Massachusetts statute would conflict with the national policy of free and unfettered collective bargaining is clear. Although the State Board has limited direct coercive power (its decisions are binding for only six months, and then only upon the parties who joined in application to it), nevertheless the indirect coercive effect of its actions upon the parties to a labor dispute is by no means insubstantial. Mere participation in State Board hearings will surely have some tendency to solidify positions taken at the bargaining table thereby making it more difficult later to modify or abandon a stand taken on a bargaining issue in favor of an amicable settlement. Moreover, having held a hearing, the Board is not limited to editorial comment. Nor are its functions merely to mediate and conciliate. Its function after investigating a labor controversy is to render a written decision to be made public and be open to public inspection advising the parties as to what they should do to end the controversy and ascertain which of the parties is 'mainly responsible or blameworthy' for its existence. The obvious statutory purpose is to coerce agreement by invoking official action to mold public opinion with respect to a labor dispute to the end of bringing the pressure of public opinion to bear to force a settlement. This is quite contrary to the national policy not to compel agreement but instead only to encourage voluntary agreements freely arrived at after 'good faith' bargaining between the parties. The conflict between state and federal policy is obvious.

Id. at 67. Another similar Oklahoma state statutory scheme met a similar fate in Oil, Chemical and Atomic Workers Int'l Union Local 5-283 v. Arkansas Louisiana Gas Co., 332 F.2d 64 (10th Cir. 1954). More recently, a similar New York Board of Inquiry was enjoined in the Southern District of New York. New York News, Inc. v. State of New York, 745 F. Supp. 165 (S.D.N.Y. 1990).

    The Governor cites Alameda Newspapers, Inc. v. City of Oakland, 95 F.3d 1406

(9th Cir. 1996) in support of its claim that action not amounting to "regulation" of the labor dispute is not prohibited by NLRA preemption. However, in the <u>Alameda Newspapers</u> case, the city action involved no body appointed for the purpose of arbitration, mediation or decision. There were no subpoenas, hearings or other deliberative process calculated to end the labor dispute. Rather, in <u>Alameda Newspapers</u>, the city simply cancelled its few newspaper subscriptions, announced a decision to stop advertising in the newspaper and used its moral suasion to urge its citizens to back the boycott. Such activity is permissible pursuant to the NLRA.

## **SEVERABILITY OF IOWA STATUTES**

The Governor urges the court to examine each provision of Chapter 679B and permit the appointed board of arbitration and conciliation to exercise those powers conferred by the chapter that are not preempted by the NLRA. The Governor concedes that the prohibition against strikes and lockouts during the investigation found in IOWA CODE § 679B.12 is preempted. It also concedes that conferring authority to compel testimony and the production of books, records and other tangible items may be preempted.

The court finds that the preemption of the NLRA is broader than that suggested by the Governor. The primary purpose of the board is to investigate the cause of the labor dispute, suggest how it should be resolved and make its "decision" public. This is precisely the regulation of this labor dispute that is preempted. Because each of the sections from IOWA CODE § 679B.8 to § 679B.14 are preempted, the board would have no authority whatsoever if the court made the section by section inquiry suggested by the Governor.

## LOCAL INTEREST EXCEPTION

The Governor contends that the "local interest" exception to preemption applies to this case. In order for that exception to be applied, the local interest must be deeply rooted in local feeling and responsibility. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 243 (1959). However, the conduct must be marked by violence and imminent threats to the public order. Id. at 2 47. The Governor admits that he has the burden to establish that the local interest exception applies. The only evidence in this record concerning violence is that there has been no violence associated with this dispute. The Governor fails to meet his burden of proof in this regard.

## CONCLUSION

Finally, the Governor repeatedly asserts that GPC, and perhaps the court, seeks to "muzzle" the Governor when dealing with this important local labor dispute. In granting the requested relief, the court has absolutely no interest in regulating the Governor's expression. The holding of this court is limited to the issue before it, that is, whether the Governor's proposed appointment of a board of arbitration and conciliation pursuant to IOWA CODE Chapter 679B is activity preempted by the NLRA. The court finds that it is.

Upon the foregoing,

**IT IS ORDERED** that the court finds and declares that the application of IOWA CODE Chapter 679B to the labor dispute at GPC is preempted by the NLRA. The Governor of the State of Iowa is permanently enjoined from invoking the authority of IOWA CODE Chapter 679B to appoint a board of arbitration and conciliation in an effort to bring resolution to the labor dispute between the plaintiff and the UFCW Local 86D. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED** this 17th day of February, 2010.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA